**SIGNED THIS: April 27, 2012**

_____
**Mary P. Gorman
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re | ) |
| | ) Case No. 11-71787 |
| E.J. PAINTIFF and | ) |
| SARAH J. PAINTIFF, | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| DISCOVER BANK, Issuer of the | ) |
| Discover Card, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 11-7089 |
| | ) |
| SARAH J. PAINTIFF, | ) |
| | ) |
| Defendant. | ) |

# O P I N I O N

-1-

This matter is before the Court on a Motion for Attorney's Fees Pursuant to 11 U.S.C. § 523(d) filed by Sarah J. Paintiff. The Motion was filed following the entry of an Order granting Ms. Paintiff's Motion for Summary Judgment and finding that her debt to Discover Bank, Issuer of the Discover Card, was dischargeable as a matter of law. Ms. Paintiff seeks attorney's fees in the amount of $2368.74. Because the Court finds that the filing of this adversary proceeding was not substantially justified, the Motion for Attorney's Fees will be granted in the amount requested.

**I. Factual and Procedural Background**

Sarah J. Paintiff ("Debtor") and her husband, E.J. Paintiff, filed a joint voluntary petition under Chapter 7 on July 5, 2011. Discover Bank, Issuer of the Discover Card ("Discover"), was listed as an unsecured nonpriority creditor on Schedule F - Creditors Holding Unsecured Nonpriority Claims. On October 7, 2011, Discover filed its adversary Complaint against Debtor, and an amended Complaint was filed on October 29, 2011. Discover alleged that, on or about May 3, 2011, Debtor obtained a $2000 cash advance through her Discover account and that she made no payments on her account thereafter. Discover contended that the Debtor obtained the cash advance by false pretenses, a false representation, or actual fraud, rendering the debt nondischargeable. *See* 11 U.S.C. § 523(a)(2)(A). Further, Discover alleged that, because the cash advance was obtained within 70 days of the petition date, there was a presumption that the resulting debt was non-dischargeable. *See* 11 U.S.C. § 523(a)(2)(C)(i)(II).

Debtor responded by asserting that, when the cash advance was taken on May 3, 2011, her husband was employed and earning in excess of $82,000 per year. She claimed that, on May 19, 2011, her husband was involuntarily terminated without prior warning from his employment and they were thereafter unable to meet their obligations. She denied that the $2000 cash advance was taken with knowledge of the impending job loss or with intent to deceive Discover.

On February 15, 2012, this Court issued an Order granting Debtor's Motion for Summary Judgment. In an contemporaneously-issued Opinion, the Court explained that Discover had completely failed to comply with mandatory summary judgment pleading requirements set forth in the Local Rules of the District Court for the Central District of Illinois and, as a consequence, Plaintiff's Motion for Summary Judgment and the accompanying affidavits stood unrebutted. The Opinion then set forth the Court's finding that the Debtor had successfully rebutted the statutory presumption of nondischargeability set forth in § 523(a)(2)(C)(i)(II) and, in so doing, had established as a matter of law that she did not make a false representation of her intent to repay the cash advance when she obtained it. *Discover Bank, Issuer of Discover Card v. Paintiff (In re Paintiff)*, 2012 WL 506574, at *3-4 (Bankr. C.D. Ill. Feb. 15, 2011).

On March 2, 2012, the Debtor filed her Motion for Attorney's Fees pursuant to 11 U.S.C. § 523(d). Debtor asserts that she should be awarded a judgment against Discover for her attorney's fees incurred defending this matter because Discover's position was not substantially justified inasmuch as the factual allegations set forth in Discover's Amended Complaint were conclusory, that Discover had failed to conduct any pre-filing investigation, and had failed to avail itself of any pretrial discovery. A Memorandum of Law in Support of Defendant's Motion for Attorney's Fees was also filed, as was an Affidavit of Attorney as to Fees showing 13.5 hours billed at a rate of $175 per hour.

On March 28, 2012, Discover filed its Response to the Motion for Attorney's Fees. Discover contends that, because both the Debtor and Mr. Paintiff were unemployed at the time of filing, and because one of their vehicles had been returned, repossessed, or sold within weeks of the bankruptcy filing, it was substantially justified in filing this adversary proceeding. Discover also asserts that Debtor failed to timely provide information or documentation to support her contentions regarding the circumstances surrounding the bankruptcy filing and, thus, places the blame for the filing of the

unsuccessful adversary proceeding on the Debtor. Debtor filed a reply disputing Discover's arguments. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. Matters relating to the dischargeability of particular debts are core proceedings. *See* 28 U.S.C. § 157(b)(2)(I).

## III. Legal Analysis

Section 523(d) of the Bankruptcy Code provides as follows:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).

Section 523(d) was enacted to redress creditor practices that violated the spirit of the Bankruptcy Code by preventing an honest consumer debtor from getting a fresh start. *See Manufacturers Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 219 (N.D. Ill. 1987). The legislative history reflects that the purpose of this provision is to discourage creditors from bringing actions in hope of obtaining a settlement from an honest debtor who is anxious to save attorney's fees. *Id.*, *citing* H.R. Rep. No. 595, 95th Cong., 2d Sess. 131, *reprinted in* 1978 U.S.Code Cong. & Admin.News pp. 5787, 5963, 6092. Explained more fully:

> The purpose of Section 523(d) is plain. It is intended to operate as a strong deterrent to a creditor's commencement and/or continuation of marginal or unjustified objections to dischargeability. In enacting Section 523(d) Congress recognized the usual wide disparity in litigation resources possessed by creditors and consumer debtors; a fact that might often be exploited by unscrupulous or reckless creditors. Such creditors may be tempted to bring or continue untenable dischargeability cases

> simply to "scare up" an installment-type settlement from a cash-poor debtor. Debtors are frequently unable to fund an adequate defense in such cases and, therefore, may be inclined to agree to the nondischargeability of a debt in a reduced amount rather than fund the current costs of defending the litigation. The provision of fee awards under Section 523(d) ameliorates this potential for abuse by deterring creditor overreaching and supplying a monetary incentive for counsel to enter such cases on behalf of debtors.

*In re Poirier*, 214 B.R. 53, 55-56 (Bankr. D. Conn. 1997)(citations omitted).

Fees and costs are to be awarded if the position of the creditor was not substantially justified, and special circumstances do not make the award unjust. *Hudgins*, 72 B.R. at 219; *see also In re Napier*, 205 B.R. 900, 908 (Bankr. N.D. Ill. 1997). The "substantially justified" requirement applies both to the filing of the complaint and to its prosecution. *Poirier*, 214 B.R. at 57.

The Supreme Court has defined the term "substantially justified" as meaning "justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also In re Pusateri*, 432 B.R. 181, 197 (Bankr. W.D.N.C. 2010). Thus, the proper inquiry is objective, ultimately turning on an assessment of reasonableness. *Poirier*, 214 B.R. at 57. The requirements for substantial justification are (1) a reasonable basis in law for the theory it propounds; (2) a reasonable basis in truth for the facts alleged; and (3) a reasonable connection between the facts alleged and the legal theory advanced. *Napier*, 205 B.R. at 908 (citations omitted).

Discover premises its argument that it was substantially justified in filing its adversary Complaint on the fact that it enjoyed the statutory presumption that cash advances taken within 70 days before the case filing are nondischargeable. *See* 11 U.S.C. § 523(a)(2)(C)(i)(II). Because, once the facts which give rise to the presumption have been established, the burden of proof in a case shifts to the Debtor, Discover believes that it had virtually no duty to do a pre-filing investigation of whether it might ultimately prevail in the case. Case law does not support that belief.

In *Pusateri*, a credit union filed an adversary complaint against a debtor seeking a

determination that the debtor's credit card debt was nondischargeable. The debtor, a realtor who had a high income until he suffered a debilitating back injury in the months before filing, moved to dismiss and, following discovery and the debtor's deposition, the credit union moved for voluntary dismissal. The debtor then sought an award of attorney's fees and costs pursuant to 11 U.S.C. § 523(d). The court found that the evidentiary record grossly failed to support the credit union's contentions, and that there was a total dearth of evidence in the record to indicate that the debtor did not intend to pay the credit union when the charges were made. Because the court found the credit union had no knowledge of the debtor's intentions at the time the action was filed and was indifferent to those intentions, fees were awarded under 11 U.S.C. § 523(d): "Since [the credit union] chose to file and prosecute this action with no effort to ascertain the true facts, and since the evidence does not to (sic) support its fraudulent misrepresentation charges, the credit union was not substantially justified" in filing the nondischargeability complaint. *Pusateri*, 432 B.R. at 201.

In *Poirier*, debtors used balance transfer checks on a credit card account to retire balances owed to other creditors. When they filed bankruptcy, their card issuer, relying solely on the timing and sketchy appearance of the charges and without conducting a Rule 2004 exam or undertaking any pre-filing investigation, filed an adversary complaint alleging fraud. Debtors' trial testimony overcame these suggestions and each disputed charge was found to have been honestly incurred to reduce and consolidate overall debt. Because the creditor did not attempt to confirm its suspicions by conducting discovery or a Rule 2004 examination, the card issuer's action was held not to be substantially justified, and attorney's fees pursuant to § 523(d) were awarded to the debtors. *Poirier*, 214 B.R. at 57.

In the case at bar, Discover did not attend the first meeting of creditors, did not seek to obtain a transcript of the first meeting of creditors, and did not utilize the discovery opportunities provided for by Rule 2004 prior to filing its adversary Complaint. *See* Fed. R. Bankr. P. 2004. However, even

a cursory review of nothing more than the Debtor's bankruptcy schedules and Statement of Financial Affairs would have lead a responsible creditor to the conclusion that further inquiry was warranted before filing an adversary complaint. Schedule I shows that both the Debtor and Mr. Paintiff were unemployed when the case was filed. But, Debtor's Form B22(A) - Chapter 7 Statement of Current Monthly Income shows that the Paintiffs' household average monthly income for the six months prior to the filing was $6145.44. The Statement of Financial Affairs shows Mr. Paintiff had earnings from employment of $70,363.32 in 2009 and $82,270.91 in 2010. From these documents, the obvious conclusion should have been drawn by Discover's attorneys that the Debtor and her husband had suffered a dramatic decrease in income in the months just prior to filing. Further investigation should have been conducted to determine what impact those changes might have on Discover's potential claims against the Debtor.

As stated above, Discover did not send a representative to the Debtor's creditors' meeting or seek to take a Rule 2004 exam. All that Discover did pre-filing was have a New York attorney, Glenn D. Miller, send a form demand letter. Although the clear purpose of the letter was to demand a lump sum payment or a reaffirmation agreement from the Debtor, the last paragraph of the letter contained an offer to consider any additional information that the Debtor's attorney might want to provide in defense of the Discover's claim. Although Discover relies on the letter now as evidence of its attempt to investigate its claim before this case was filed, there is no fair reading of the letter which would suggest that it was a serious attempt to undertake a pre-filing investigation of the reasonableness of Discover's claim. The offer to consider additional information was incidental, at best, to the main purpose of the letter, which was to collect what Discover claimed was a non-dischargeable debt.

Discover also now claims, through an affidavit of Attorney Natasha Khachatourians, that post-filing efforts were made to obtain information from the Debtor that could have resulted in the case being promptly dismissed. However, Ms. Khachatourians' affidavit makes clear that her

willingness to consider mitigating evidence and possible dismissal of the case was expressly conditioned upon the Debtor agreeing to pay Discover's filing fee costs. Debtor's attorney correctly points out that Debtor had no obligation to pay Discover's costs in order to obtain the dismissal of a case that never should have been filed in the first place.

Finally, Discover has submitted the affidavit of Attorney Richard Ralston, who has his office in Seattle, Washington and actually filed this case. Mr. Ralston asserts that he actively sought information from the Debtor's attorney. However, his affidavit has a series of emails attached to it which establish that Mr. Ralston first contacted the Debtor's attorney for more details during the afternoon of January 6, 2012, which was the day that Discover's response to Debtor's Motion for Summary Judgment was due. In the emails, Mr. Ralston confidently predicts that the Debtor's Motion for Summary Judgment will surely be denied and demands documentary proof that Mr. Paintiff did not have advance notice that he would be fired. Mr. Ralston also admits in his affidavit that Discover's first formal discovery requests were not served on Debtor's attorney until January 9, 2012.

Under these circumstances, the Court cannot find that the filing of this adversary proceeding by Discover was substantially justified. No serious investigation was done by Discover before filing and little was done afterwards. Discover put little effort into defending the Motion for Summary Judgment. Mr. Ralston now admits that he began looking for the information he needed for his response only a few hours before the response was due. This Court granted the Debtor's Motion for Summary Judgment in large measure because Discover failed to comply with the Local Rules in its response, and, as a result, all of the Debtor's asserted facts were deemed admitted. *Discover v. Paintiff*, 2012 WL 506574, at *4. Discover was not substantially justified in filing this adversary proceeding and the Motion for Attorney's Fees must be granted.

As to the amount being requested, the Court finds the hourly rate of $175 and the time of 13.5 hours both to be reasonable. Discover does not claim otherwise. Judgment will be entered

accordingly.

As a final comment, this Court must note that its practice of hearing virtually all adversary pretrial matters via telephone conference calls is something of a double-edged sword. While it is undoubtedly less expensive for remote counsel to participate telephonically rather than be required to hire local counsel for in-court appearances, it also has the unfortunate and perhaps unavoidable side-effect of allowing a creditor to take an adversary complaint all the way up to trial without ever taking a serious look at the merits of the case. The fact that the favorable cost structure of our local practice may encourage a creditor's attorney located in Seattle or New York to bring a $2000 adversary proceeding in Central Illinois without any investigation is troubling. However, the modest initial cost involved in bringing an action does not justify the filing of a case with little or no merit. And, when a consumer dischargeability case with no merit is filed, as was done here, the fee shifting provisions of § 523(d) are properly invoked.

### IV. Conclusion

In enacting § 523(d), Congress sought to deter precisely what occurred with the filing of this adversary proceeding. Having conducted no discovery and without even examining the schedules and Statement of Financial Affairs, Discover filed this case. Discover had no evidence of actual fraud on Debtor's part, but relied instead on the timing of the transaction along with counsel's uninformed interpretation of the chronology of events which preceded the bankruptcy filing. Suppositions and theories are no substitute for examining court records and conducting appropriate and responsible discovery.

Because Discover's position in this adversary was not substantially justified — and this is not a close case — Discover will be charged with Debtor's attorney's fees. Accordingly, Debtor's Motion for Attorney's Fees Pursuant to 11 U.S.C. § 523(d) will be allowed, and a judgment will be entered

in favor of the Debtor against Discover in the amount of $2368.74.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###